UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| United States of America, | * | |
| --- | --- | --- |
| Plaintiff, | * | CASE NO. |
| v. | * | |
| Anil KUMAR, Manoj KUMAR, Mandeep SINGH | * | |
| Defendants. | * | |

DECLARATION OF EUGENE CHARBONNEAU, DO

I, Eugene Charbonneau DO, hereby declare:

1. I am a Family Medicine Doctor and serve as the assigned Clinical Director of the Stewart Detention Center, Lumpkin, Georgia. My duties include providing medical care for undocumented aliens detained at the facility. I have been employed at Stewart Detention Center since May 4, 2015.

2. I am familiar with the cases of Anil Kumar (A[Redacted] 785), Mandeep Singh (A[Redacted] 679), and Manoj Kumar (A[Redacted]747) [the Respondents]. I am the supervising physician for the Respondents, and I make this declaration upon a review of their patient records, my examination, and discussions with the treating medical staff.

3. This affidavit is made in support of the petition by the U.S. Department of Homeland Security to obtain a court order for daily weight measurements, necessary physical examinations, and laboratory blood work every 48 to 72 hours, and any emergency

1

medical interventions or procedures deemed medically necessary to sustain their lives while the Respondents are on a hunger strike. Proper medical monitoring of the Respondents' state of health is necessary to ensure that medical staff can accurately assess each respondent's state of health, and determine when it may be necessary to implement immediate medical intervention, such as involuntary administration of nutrients, in order to preserve the Respondents' lives.

## **ANIL KUMAR**

4. Mr. Anil Kumar is a 24-year-old male who has been detained at the Stewart Detention Center pending removal from the United States since May 2018. He was previously detained at the Folkston Detention Center from November 25, 2017 to May 10, 2018. He is a native and citizen of India.

5. Mr. Kumar has no known past significant medical history and currently does not take any medications.

6. Mr. Kumar is on a self-imposed hunger strike. His last meal was on April 17, 2018. To date, Mr. Kumar has missed 84 meals. His refusal to eat is based on his discontent with ICE and dissatisfaction with the outcome of his immigration case.

7. Mr. Kumar has been compliant with examination and daily weight measurements; however, he is not allowing laboratory tests to be done. Mr. Kumar began refusing lab tests on May 14, 2018.

8. Mr. Kumar has lost a total of 14.8 pounds since April 15, 2018 (119.6 lbs.), approximately 12% of baseline body weight during his hunger strike.

9. Mr. Kumar's current physical condition is fragile and his present weight is 104.8 lbs. His pre-albumin on 05/11/18 was 14.9 mg/dL (normal 20-40 mg/dL).

10. Mr. Kumar refuses to eat, is drinking only small amounts of water daily, and is refusing laboratory tests.

11. Mr. Kumar has been evaluated by the mental health team in efforts to have him discontinue his hunger strike. He does not have any psychiatric condition that would cause him not to eat.

## MANDEEP SINGH

12. Mr. Mandeep Singh is a 20-year-old male who has been detained at the Stewart Detention Center pending removal from the United States since May 10, 2018. He was previously detained at the Folkston Detention Center from December 30, 2017 to May 10, 2018. He is a native and citizen of India.

13. Mr. Singh has no known past significant medical history and currently does not take any medications.

14. Mr. Singh is on a self-imposed hunger strike. His last meal was on April 17, 2018. To date, Mr. Kumar has missed 84 meals. His refusal to eat is based on his discontent with ICE and dissatisfaction with the outcome of his immigration case.

15. Mr. Singh has been compliant with examination and daily weight measurements; however, he is not allowing laboratory tests to be done. Mr. Singh began refusing lab tests on May 14, 2018.

16. Mr. Singh has lost a total of 15 pounds since April 15, 2018 (119.6 lbs.), approximately 12% of baseline body weight during his hunger strike.

17. Mr. Singh's current physical condition is fragile and his present weight is 104.8 lbs. His pre-albumin on 05/11/18 was 14.9 mg/dL (normal 20-40 mg/dL).

18. Mr. Singh refuses to eat, is drinking only small amounts of water daily, and is refusing laboratory tests.

19. Mr. Singh has been evaluated by the mental health team in efforts to have him discontinue his hunger strike. He does not have any psychiatric condition that would cause him not to eat.

## MANOJ KUMAR

20. Mr. Manoj Kumar is a 20-year-old male who has been detained at the Stewart Detention Center pending removal from the United States since May 10, 2018. He was previously detained at the Folkston Detention Center from December 30, 2017 to May 10, 2018. He is a native and citizen of India.

21. Mr. Kumar has no known past significant medical history and currently does not take any medications.

22. Mr. Kumar is on a self-imposed hunger strike. His last meal was on April 17, 2018. To date, Mr. Kumar has missed 84 meals. His refusal to eat is based on his discontent with ICE and dissatisfaction with the outcome of his immigration case.

23. Mr. Kumar has been compliant with examination and daily weight measurements; however, he is not allowing laboratory tests to be done. Mr. Kumar began refusing lab tests on May 14, 2018.

24. Mr. Kumar has lost a total of 17.9 pounds since April 15, 2018 (154.3 lbs.), approximately 11 % of baseline body weight during his hunger strike.

25. Mr. Kumar's current physical condition is fragile and his present weight is 136.4 lbs. His pre-albumin on 05/11/18 was 14.2 mg/dL (normal 20-40 mg/dL).

26. Mr. Kumar refuses to eat, he is drinking only small amounts of water daily, and is refusing laboratory tests.

27. Mr. Singh has been evaluated by the mental health team in efforts to have him discontinue his hunger strike. He does not have any psychiatric condition that would cause him not to eat.

## The effect of a hunger strike on the human body

28. It is difficult to predict for how long the human body can survive without food, and if an individual does not have adequate fat stored, this time decreases significantly. If an individual goes without water for approximately eight to ten days, he will suffer from dementia, delirium seizures and ultimately become unconscious. Dehydration greatly accelerates a progressive starvation because the waste that the body produces is not excreted. Death by terminal total fasting occurs by acute depletion of thiamine, causing fatal arrhythmia and/or cardiac arrest.

29. Between the 15th and 30th day of a hunger strike, a patient may suffer neurological symptoms which are severe enough to warrant hospitalization.

30. Medical literature reflects that metabolic imbalance caused by fasting is likely to result in permanent bodily damage and/or death once weight loss reaches 18% of the patient's initial weight.

31. The medical staff has explained to the Respondents the medical necessity to eat and drink to preserve their health and the medical risks incurred during a hunger strike. Other staff members have repeatedly talked to the Respondents in attempts to convince them to eat solid foods and/or a liquid diet. However, the Respondents continue to refuse to resume eating.

32. I have personally explained to the Respondents my concerns regarding their condition and the medical risks involved with a continued lack of inappropriate nourishment. That is, they risk significant metabolic changes induced by a decreased nutritional intake. If they continue to be on a hunger strike, they will reach a state of severe metabolic imbalance, with a high risk of adverse consequences such as permanent damage to his kidneys, liver, heart failure and the risk of death.

33. I have counseled the Respondents about the effects of self-imposed dehydration and starvation on the body. I have also informed them of involuntary hydration and feeding procedures that will be done to prevent injury and or death to them should they continue not to eat.

34. In my professional medical judgment, should they decide to continue the hunger strike, they will reach a point where they will require immediate medical intervention to prevent further deterioration and serious medical complications. Continued fasting will result in permanent damage to their internal organs and has the potential to become life threatening. Metabolic imbalance, if left untreated, will cause fatal arrhythmia or cardiac arrest. If medical intervention is required, it will be necessary to feed them a nutritional supplement through a nasogastric tube and or intravenous line in order to provide them the nutrition and hydration they need. Also, it will be necessary to perform laboratory test and physical evaluation to monitor and assess their clinical conditions. If their laboratory tests reveal other conditions requiring medical attention, it may be necessary to administer such medications intravenously. Restraints may be needed to accomplish this involuntary treatment and medical monitoring.

## The need for medical monitoring, to include involuntary blood draw.

35. During the first three days of a hunger strike, the body will start using the glycogen storage in an effort to maintain glucose levels. This storage will rarely last more than 72 hours. Between day 4 and day 13, the brain and red blood cells require glucose as an energy source, and in view of depletion of glycogen storage, the body will start obtaining glucose from non-carbohydrate sources (for example muscle protein) and fatty acids. In this phase the body will experience loss of body fat, protein and total body electrolytes such as potassium, phosphate and magnesium. The body will maintain the serum electrolyte levels at the expense of intracellular stores. Between day 14 and day 34 thiamine deficiency occurs.

36. In my professional medical judgment, it is necessary to obtain a court order to require laboratory tests at least every 48 – 72 hours, physical examination, daily weights, and frequent vital signs for the detainees on hunger strike. Laboratory test are needed to evaluate their metabolic state to include electrolytes and kidney function.

37. The laboratory test that need to be obtained during a hunger strike include:
    a. Complete metabolic panel. This test reveal and increase in markers of kidney function in view of any renal injury. The panel tests BUN (blood urea nitrogen) creatinine level and proteins. It also reveals electrolyte disturbances that can lead to heart arrhythmias such as potassium, phosphate, magnesium and glucose levels.
    b. Complete blood count. This test reveals the hemoglobin level.
    c. Urinalysis, which reveals the presence of ketones, blood and crystals in the urine.

7

    d. Thiamine levels to assess deficiency.

    e. Electrocardiogram, if the patient shows elevated potassium, which can lead to arrhythmias.

    f. Creatinine phosphokinase (CKT), which is an enzyme found inside muscle cells and is released into the blood, when the muscle cells rupture. The increase in CKT can lead Rhabdomyolysis, destruction of muscle tissue.

    g. Prealbumin, used as a marker for nutritional status evaluation. Prealbumin will decrease over time the longer a patient fails to consume adequate nutrition, and the prealbumin level correlates with patient morbidity and mortality risk. Normal prealbumin is 15-35 mg/dL. When prealbumin falls to 5-11mg/dL, significant morbidity risks exist and aggressive nutritional support is necessary.

38. In order to ensure the patient's medical safety, should the Respondents refuse to cooperate with blood work, medical soft restraints will be required to immobilize the respondents and prevent unnecessary injury to both respondents and medical staff.

39. In light of the Respondents' hunger strike and refusal of medical care, in my professional judgment, it is medically necessary to obtain court orders for the above mention procedures to monitor the Respondents' physical condition and ensure their health.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of May, 2018.

_____

Eugene Charbonneau DO
Board Certified Family Medicine
Clinical Director
Stewart Detention Center
Lumpkin, Georgia